**E-FILED**
Tuesday, 17 September, 2013  01:07:58 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **KRISTEN ZUPPARDI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 12-CV-2183** |
| | ) | |
| **WAL-MART STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#40)

filed by Defendant, Wal-Mart Stores, Inc., and the Motion for Partial Summary Judgment

(#46) filed by Plaintiff, Kristen Zuppardi.  This court has carefully reviewed the arguments

of the parties and the documents provided by the parties.  Following this thorough review,

Defendants' Motion for Summary Judgment (#40) is GRANTED and Plaintiff's Motion for

Partial Summary Judgment (#46) is DENIED.  In addition, Plaintiff's Motion to Strike Reply

(#54) and Motion to Stay Ruling (#55) are DENIED.

### FACTS[1]

---

[1]  The facts are taken from the Statements of Undisputed Facts provided by the parties
and the documents provided by the parties. This court notes that its task of determining the
undisputed facts was complicated by Plaintiff's failure to follow the Local Rules of the Central
District of Illinois in responding to Defendant's Undisputed Material Facts.  Local Rule
7.1(D)(2)(b) states that a party responding to a motion for summary judgment is to list "by
number" each fact "which is conceded to be undisputed and material," each fact "which is
conceded to be material but is claimed to be disputed," as well as each fact "which is undisputed
but is claimed to be immaterial."  Plaintiff did not respond to Defendant's Undisputed Material
Facts "by number."  Instead, she listed her own undisputed material facts, disputed material facts
and undisputed immaterial facts, using numbers different from those used by Defendant.
Plaintiff also failed to follow Rule 7.1(D)(2)(b)(4) because, as far as facts claimed to be
immaterial, she did not "[s]tate the reason the fact is immaterial."  To the extent this court has
not been able to discern whether Plaintiff has responded to facts included by Defendant, those

Plaintiff is a resident of Columbia, Missouri.  On June 15, 2010, Plaintiff lived in Champaign, Illinois.  She was shopping at Defendant's retail store in Champaign at around 4:00 p.m.  Plaintiff testified that she retrieved a cart at the front of the store and proceeded down a main aisle straight to the back of the store to buy milk.  Plaintiff testified that she did not see any other customers or any employees of the store as she walked to the back of the store.  While Plaintiff was walking toward the back of the store and talking to her brother, she slipped and fell.  Prior to falling, she did not see any substance on the ground.  After she fell, Plaintiff saw a puddle of what she believed to be water.  Plaintiff testified that the puddle was "big," around two feet in diameter.  There were no track marks or footprints in the liquid on the ground, and there were no trails leading from the water to any display or freezer.  Plaintiff did not know where the liquid on the floor came from.  Plaintiff testified that she knew the substance she slipped on was water because it was clear and odorless.  She also testified that she would not have seen the puddle if she had been looking at the ground prior to the fall because "it was really blended in with the floor."  It is undisputed that the puddle that caused Plaintiff's fall was on a concrete floor.

At her deposition, Plaintiff drew a diagram depicting the location of the fall in the store.  Plaintiff also identified the location of her fall on a photograph of the area where the fall occurred.  According to both the diagram and photograph, the fall did not occur near any

---

facts have been deemed admitted by this court. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-24 (7th Cir. 1994).

of the store displays or freezers containing milk, eggs and frozen foods. A display containing eggs is visible in the photograph but is some distance away from the place Plaintiff marked as the location of the fall. Plaintiff testified that the area where she fell was not close to a display.

Plaintiff testified that, when she fell, there were no Wal-Mart associates in the area. There were no other customers in the immediate vicinity and there were no adult witnesses to the fall. Plaintiff testified that she had to go find a Wal-Mart employee after her fall. She testified that the first employee she found was restocking shelves in grocery. Plaintiff testified that she found the employee over in the food section, "[m]aybe by like the cookies and stuff." She also indicated that an employee took her report at the end of an aisle where "there's more frozen food over here or cold foods," which she described as "hot dogs and stuff." Plaintiff testified that "it might have been like the pop and water aisle."

Defendant provided the affidavit of Robert Zermeno, dated July 2, 2013. Zermeno stated that he is the Asset Protection Manager of the Champaign store at issue. He stated that the floor plan of the store, which was attached to the affidavit, was an accurate depiction of the layout of the store on June 15, 2010. Zermeno stated that he marked the location of the hot dogs, soda products and cookies in the store on June 15, 2010.

At his deposition, George Steward testified that he was an assistant manager at the store on June 15, 2010. Steward testified that he had no personal recollection of the investigation conducted with respect to Plaintiff's accident, including the incident file.

Steward highlighted a copy of the floor plan of the store to illustrate various areas of the store and the relation to the location of Plaintiff's incident.  Steward also marked the area where water bottles were sold in the store.  The area where the water bottles were sold was approximately six aisles away from the location of Plaintiff's fall, as depicted on the floor plan.  It was a different aisle than the aisles where hot dogs, soda products and cookies are sold.  The floor plan showed that Plaintiff's fall occurred in an action alley, which is a highly trafficked area of the store.  It is undisputed that Defendant's employees use the action alley in order to restock items for grocery, paper goods, pets, chemicals and dairy.  Steward testified at length about Defendant's policies and procedures.  Steward testified that all associates and managers are required to monitor action alleys and make sure they are safe. He testified that all associates are required to stay with a spill until they see it removed and that all associates and managers carry a "towel in pocket" to clean up any discovered spill. Steward stated that Defendant's associates and managers are required to clean up spills in a timely manner.

Steward testified that Plaintiff's accident occurred near a door that led to a back area in the store that contained overstock merchandise, the break room, the time clock and various management offices.  Steward testified that the back door was frequently entered and exited by Defendant's associates and managers.  Steward testified that, based upon the proximity of the location of the spill to those back doors, the spill would have been cleaned up immediately.  Steward testified that all of Defendant's employees were required to follow

4

Defendant's policies and procedures, without exception. Steward testified that Defendant's associates and managers perform regular safety sweeps of the store and are "constantly" on alert for possible unsafe conditions while performing their daily activities. Steward testified that Defendant had a "duty to warn and guard about spills" and that it is Defendant's responsibility "to ensure that its store is safe for associates and customers."

Unfortunately, the customer incident file related to Plaintiff's accident has not been located by Defendant. Defendant was able to locate five photographs taken after Plaintiff's fall which Plaintiff testified depicted the area where she fell. Plaintiff testified that she was present when some of the photographs were taken. It is undisputed that the investigation photographs show the area of Plaintiff's fall and reflect the size and type of the spill. Plaintiff's accident was reported to Claims Management, Inc. (CMI)[2] and Defendant has provided a copy of CMI's claim report. This report includes the date and time of the incident and states that the claim involves a customer "that alleges slip, fall, or trip." The report also states that the customer slipped on water by the eggs. The report did not list any witnesses to the incident. Zermeno stated in his affidavit that the surveillance cameras at the store are positioned in such a way that the area of Plaintiff's accident would not have been captured on the cameras.

Defendant disclosed to Plaintiff a list of incidents at the Champaign store. This documentation showed that a customer fell on a "wet area of floor" in the grocery area/action

---

[2] CMI is the casualty claims administrator for Defendant and its insurance carriers.

alley of the store on May 8, 2010.  In addition, on June 12, 2010, a customer reported slipping on a wet spot in the action alley of the store.  The documentation showed that there had been no other incidents involving slipping in clear liquid for over a year prior to the May 8, 2010 incident.

## PROCEDURAL HISTORY

On June 8, 2012, Plaintiff filed a Complaint against Defendant in the circuit court of Champaign County.  Plaintiff alleged that, on June 15, 2010, liquid accumulated on the floor around or near the dairy section of Defendant's retail store in Champaign.  She alleged that agents and/or employees of Defendant knew or should have known that this liquid had accumulated and committed one or more of the following negligent acts or omissions:

    a.    Failed to take adequate preventative measures to prevent the accumulation of liquid on the floor;

    b.    Failed to remedy the liquid accumulation in a reasonable amount of time;

    c.    Failed to warn the customers, including, but not limited to, the Plaintiff, KRISTEN ZUPPARDI, of the hazard associated with the accumulation of liquid on the floor;

    d.    Failed to exercise reasonable care in providing a safe environment for customers, including, but not limited to, Plaintiff, KRISTEN ZUPPARDI.

6

Plaintiff alleged that, as a direct and proximate result of one or more of these negligent acts or omissions, she slipped on the accumulated liquid and fell to the floor, sustaining injuries.

On July 19, 2012, Defendant filed a Notice of Removal (#1) and removed the case to this court based upon diversity jurisdiction.  The allegations in the Notice of Removal (#1) were sufficient to establish that the parties in the Complaint had diverse citizenship and that the amount in controversy had been satisfied.

On May 29, 2013, Defendant filed a Motion for Summary Judgment (#40), with attached exhibits.  Defendant argued that it was entitled to summary judgment on Plaintiff's claims because it is undisputed that Defendant had no actual or constructive notice of the water on the floor.  Defendant argued that, because of this lack of notice, it did not breach any duty to Plaintiff under Illinois law.  On June 19, 2013, Plaintiff filed a Response (#45) to Defendant's Motion, with attached exhibits, and also filed a Motion for Partial Summary Judgment (#46), with attached exhibits.  Plaintiff argued that the "lack of employees in and around the pertinent area clearly indicates that Defendant was not following its own policies."  Plaintiff argued that based on this fact, plus the missing investigation file, this court should find, as a matter of law, "that Defendant had notice (constructive and/or actual) of the liquid accumulation which caused [Plaintiff's] fall."

On July 9, 2013, Plaintiff filed a Motion to Strike Reply (#54) and asked this court to strike Defendant's Reply (#53) in support of its Motion for Summary Judgment.  Plaintiff also filed a Motion to Stay Ruling (#55), arguing that she needed additional discovery prior

to this court's ruling on Defendant's Motion for Summary Judgment.

ANALYSIS

I. PLAINTIFF'S PROCEDURAL MOTIONS

A. MOTION TO STRIKE

On July 9, 2013, Plaintiff filed a Motion to Strike Reply (#54) and asked this court to strike Defendant's Reply (#53) in support of its Motion for Summary Judgment. Plaintiff argued that Defendant's Reply violated Rule 7.1(D)(3) of the Local Rules of the Central District of Illinois.[3] Plaintiff also argued that Defendant's statement that Plaintiff's fall occurred at the *end* of an action alley and Defendant's dispute with Plaintiff's statement that continuous monitoring of the action alley was "mandated" were made in bad faith. Plaintiff further argued that some of Defendant's statements contradicted Steward's deposition testimony. On July 16, 2013, Defendant filed its Response in Opposition to Plaintiff's Motion to Strike (#57).

Motions to strike are disfavored. *See Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 830 (C.D. Ill. 2010). The Seventh Circuit has expressed the opinion that motions to strike "are not only unnecessary (from the parties' perspective) but also pointless (from the judiciary's)." *Custom Vehicles, Inc. v. River Forest, Inc.*, 464 F.3d 725, 727-28 (7th Cir. 2006). This court has noted that, as a general matter, it "relies on its ability to consider only arguments and facts which are properly presented and rarely grants

---

[3] This court finds this argument somewhat ironic because, as noted previously, Plaintiff failed to comply with the Local Rules in responding to the Motion for Summary Judgment.

motions to strike." *Nuzzi*, 688 F. Supp. 2d at 830.

After careful consideration, this court agrees with Defendant that it did not violate Rule 7.1(D)(3) when it provided a brief explanation when it believed that an undisputed material fact was unclear or incomplete.  This court also agrees that Defendant did not act in bad faith when it stated that the fall occurred at the end of an action alley and disputed whether continuous monitoring of the action alley was "mandated."  In addition, this court agrees with Defendant that its response to Plaintiff's additional material facts did not contradict Steward's testimony but, instead, took issue with Plaintiff's interpretation of the testimony.  In any case, this court concludes that it is well able to determine which arguments and facts are properly presented and supported.  Therefore, this court concludes that Plaintiff's Motion to Strike Reply (#54) must be DENIED.

## B.  MOTION TO STAY

On July 9, 2013, Plaintiff filed a Motion to Stay Ruling (#55).  Plaintiff argued that this court should stay ruling on Defendant's Motion for Summary Judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.  Plaintiff argued that this court should allow Plaintiff to conduct further discovery and allow Plaintiff to file a Surreply.  Plaintiff took issue with an exhibit attached to Defendant's Reply, the copy of CMI's claim report.  Plaintiff stated that her counsel had never seen this exhibit prior to the receipt of Defendant's Reply.  Plaintiff attached her counsel's affidavit in which she stated that she had never seen this document and that, if Plaintiff's former counsel had a copy of the document, he did not

provide it to her.  Plaintiff argued that she should be allowed time to conduct further discovery based upon the claim report.  Plaintiff also argued that she should be allowed to depose Zermeno, whose affidavit was attached to Defendant's Reply.  In addition, Plaintiff argued that she should be allowed to file a Surreply because of the numerous paragraphs in Defendant's Reply wherein Defendant stated that the fact was "undisputed" and nonetheless asserted additional factual allegations.

On July 16, 2013, Defendant filed its Response in Opposition to Plaintiff's Motion to Stay Ruling (#58).  Defendant argued that Plaintiff failed to provide a sufficient basis for staying the court's ruling to conduct further discovery or file a Surreply.  Defendant noted that, in her affidavit, Plaintiff's counsel did not dispute that the CMI claim report was in Plaintiff's possession prior to the filing of Defendant's Reply.  Defendant attached a copy of a letter sent to Plaintiff's counsel, dated January 25, 2013, which referred to the CMI claim report and advised that it had been produced and was in Plaintiff's file.  Defendant noted that, at no time after the January 25, 2013 letter did Plaintiff's counsel contact Defendant's counsel and advise that the report was not in her file or request a copy of the report.  Defendant argued that Plaintiff's counsel was aware of the CMI claim report at least six months prior to the filing of Defendant's Reply and had ample opportunity to conduct discovery regarding the report prior to the filing of Defendant's Motion for Summary Judgment.  Defendant argued that this court's ruling on the pending motion should not be stayed or delayed because of Plaintiff's failure to timely conduct discovery.

Defendant also argued that Plaintiff failed to offer any reason why additional discovery regarding the report is necessary. Defendant argued that further discovery on the report would have no bearing on the pending Motion for Summary Judgment as the CMI claim report offered no new facts or evidence and, rather, confirmed Plaintiff's testimony that there were no associates or customers in the area prior to the fall. Defendant further noted that Plaintiff did not specify what discovery of Zermeno was needed or what she intended to address in a Surreply. Defendant pointed out that Zermeno stated in his affidavit that he had no independent knowledge of Plaintiff's accident. Defendant stated that it submitted the affidavit of Zermeno to respond to Plaintiff's attempt to make an issue of the fact that video of the accident was not secured. As noted, Zermeno stated in his affidavit that the area where Plaintiff fell is not in an area that is captured by surveillance video. Zermeno's affidavit was also submitted to show that the cookies, hot dogs, soda and water are all located in different aisles of the store. Defendant also argued that Zermeno was identified on February 7, 2013 in Defendant's Answers to Plaintiff's First Supplemental Interrogatories but Plaintiff did not request his deposition.

In addition, Defendant argued that Plaintiff's request to file a Surreply to address Defendant's responses to her additional material facts is meritless. Defendant argued that it did not raise new arguments, but merely responded to the issues raised in Plaintiff's Response, which is allowed by Local Rule 7.1(D)(3). Defendant argued that all of the relevant facts are before the court and Plaintiff's Motion to Stay Ruling should be denied.

Rule 56(d) provides, regarding motions for summary judgment:

> If a nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition, the
> court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Rule 56(d)[4] "requires a party to state the reasons why it cannot
adequately respond to the summary judgment motion without further discovery and must
support those reasons by affidavit." *Waterloo Furniture Components, Ltd. v. Haworth, Inc.,*
467 F.3d 641, 648 (7th Cir. 2006). The affidavit must outline the reasons for needing further
discovery. *See Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000); *Young v. Netzel,*
2012 WL 266883, at *1 (C.D. Ill. 2012). A district court may, in the exercise of its
discretion, deny a motion under Rule 56(d) when the nonmoving party does not adequately
specify the reasons why additional discovery is necessary. *See Waterloo Furniture
Components, Ltd.*, 467 F.3d at 648. The failure to file an affidavit outlining the reasons for
needing further discovery alone justifies a district court decision to deny postponing ruling
on the motion for summary judgment. *See Woods,* 234 F.3d at 990.

In this case, Defendant is correct that Plaintiff has not provided this court with any

---

[4] Formerly Rule 56(f).

reasons why the additional discovery she has requested is necessary for responding to the Motion for Summary Judgment. Plaintiff's counsel's affidavit does not include a single reason why the additional discovery requested is needed. This court therefore concludes that Plaintiff has not shown that ruling on the Motion for Summary Judgment should be deferred under Rule 56(d). Moreover, this court agrees with Defendant that the relevant facts have been presented to this court and there is no need to delay ruling on the Motion for Summary Judgment. Plaintiff's Motion to Stay Ruling (#55) is DENIED.

## II. SUMMARY JUDGMENT MOTIONS

## A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772 (7th Cir. 2012). However, a court's favor toward the nonmoving party does not extend to drawing inferences supported by only speculation or conjecture. *Harper*

13

*v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). To show that there is a "genuine" issue and therefore successfully oppose a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present "definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir. 2002), *quoting EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## B. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant argues that it is entitled to summary judgment on Plaintiff's claim because Plaintiff has presented no evidence that Defendant had actual or constructive notice of the water which caused Plaintiff to fall. This court agrees.

There is no dispute that Illinois law governs the extent of Defendant's liability in this diversity action. *See Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008). In negligence cases, a plaintiff must demonstrate the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006). Whether a duty exists in a particular case is a question of law. *Marshall*, 856 N.E.2d at 1053-54. "In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." *Reid*, 545 F.3d at 481, *citing Marshall*, 856 N.E. 2d at 1057-58.

14

However, "Defendant is not an insurer of the safety of plaintiff simply because she was on [its] premises as a business invitee." *Dunlap v. Marshall Field & Co.*, 327 N.E.2d 16, 21 (Ill. App. Ct. 1975), *citing Olinger v. Great Alt. & Pac. Tea Co.*, 173 N.E.2d 443, 446 (Ill. 1961). "A business owner breaches its duty to an invitee who slips on a foreign substance if: (1) the substance was placed there by the negligence of the proprietor; (2) its servant knew of its presence; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, *i.e.,* the proprietor had constructive notice of the substance." *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 953 N.E.2d 427, 431 (Ill. App. Ct. 2011); *see also Daleus v. Target Corp.*, 2012 WL 3835836, at *2 (N.D. Ill. 2012).

Plaintiff has argued that Defendant must have caused the spill, so she does not need to show that Defendant had constructive notice. Plaintiff argued that the evidence shows that one of Defendant's employees was actively restocking shelves at the time of her fall and was "possibly" restocking water. Plaintiff contends that this court should therefore conclude that the employee, who was at least several aisles away from the location of the spill, spilled the water on the floor. Plaintiff has also argued that this court should conclude that the egg cooler may have leaked and caused the puddle on the floor. This court agrees with Defendant that there is absolutely no evidence that the substance on the floor was caused by Defendant. This court concludes that both of the scenarios suggested by Plaintiff are based on pure speculation. *See Acosta v. Target Corp., Inc.*, 2012 WL 88235, at *2 (N.D. Ill. 2012)

(it is insufficient for the plaintiff to merely provide a possible way in which a store employee could have spilled the liquid). There is no evidence which would support an inference that one of Defendant's employees spilled water on the floor. And, based on Plaintiff's own testimony that there were no trails leading from the water to any display or freezer, there is absolutely no basis for concluding that the egg cooler, which the photograph shows was some distance away from the location of Plaintiff's fall, leaked and caused the water on the floor.

"In order to create a triable issue of fact with respect to her ordinary negligence claim (whereby a showing of constructive notice in not required), Plaintiff must provide at least some evidence tending to show that the substance was more likely placed on the premises through the Defendant's negligence rather than a customer's." *Galbreath v. Wal-Mart Stores, Inc.*, 2011 WL 1560669, at *6 (C.D. Ill. 2011); *see also Thompson v. Economy Super Marts, Inc.*, 581 N.E.2d 885, 888 (Ill. App. Ct. 1991). In *Galbreath*, the plaintiff slipped and fell on a substance which appeared to be butter and, even though the plaintiff argued that butter was a substance related to Defendant's business, the court found that the plaintiff had not offered any evidence demonstrating that it was more likely Defendant's agents who placed the butter on the floor, rather than a customer. *Galbreath*, 2011 WL 1560669, at *6, *citing Olinger*, 173 N.E.2d at 446 (defendant entitled to prevail "even where there is proof that the foreign substance was related to defendant's business, but no further evidence is offered other than the presence of the substance and the occurrence of the injury"); *see also Thompson*, 581 N.E.2d at 888-89 (no direct or circumstantial evidence indicating that it was

more likely that the defendant's servant dropped the lettuce leaf and water, rather than a customer). As in *Galbreath* and *Thompson*, this court concludes that there is no evidence "however slight" from which it could be inferred that it was more likely that Defendant, rather than a customer, caused the substance to be on the floor. *See Olinger*, 173 N.E.2d at 446.

In another instructive case, the plaintiff fell on a clear liquid that spanned approximately eighteen inches and did not see the liquid on the floor prior to slipping. *Daleus*, 2012 WL 3835836, at *2. In granting summary judgment in favor of Target, the district court found that the plaintiff could not show that Target was responsible for the presence of the liquid on the floor. *Daleus*, 2012 WL 3835836, at *2. The court stated that the plaintiff bears the burden of proving the elements of her claim and could not rely on Target's failure "to show that the liquid was not put on the floor" by the store's employee. *Daleus*, 2012 WL 3835836, at *3. In this case, as in *Daleus*, "there is no evidence that the liquid was caused by an employee of [Defendant] or even a product sold at the Store." *Daleus*, 2012 WL 3835836, at *4. Defendant has correctly pointed out that there is no evidence that a water bottle was found near the accident location. Based upon the case law cited, this court concludes that Plaintiff has not shown negligence on the part of Defendant and must show actual or constructive notice in order to defeat summary judgment in favor of Defendant.

"Liability can be imposed when a business's invitee is injured by slipping on a foreign

substance on its premises if the invitee establishes that the business had actual or constructive notice of the dangerous condition that caused the fall." *Reid*, 545 F.3d at 481, *citing Pavlik v. Wal-Mart Stores, Inc.*, 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001). Where constructive knowledge is alleged, "[o]f critical importance is whether the substance [that caused the accident] was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Reid*, 545 F.3d at 481-82, *quoting Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007). "Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice." *Reid*, 545 F. 3d at 482, *citing Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 668 (Ill. App. Ct. 2000).

In *Reid*, the plaintiff slipped and fell while shopping at a Kohl's department store. After she fell, she saw a pink milkshake spilled from a large cup in a pool on the tile floor. *Reid*, 545 F.3d at 480. The manager on duty at the store arrived on the scene to assist the plaintiff and also saw the pink substance on the floor. *Reid*, 545 F.3d at 480. The manager stated that she did not see the spilled milkshake on the floor during an inspection of the aisle shortly before the fall. *Reid*, 545 F.3d at 480-81. According to the manager, Kohl's had a routine procedure for inspecting the premises which "involved a continuous walk-through by the manager on duty to ensure that the store was clean and safe." *Reid*, 545 F.3d at 481. The manager stated that, during her walk-through, she passed the aisle where the plaintiff had fallen at the most ten minutes prior to the fall and had not seen the spilled milkshake. *Reid*,

545 F.3d at 481. The plaintiff presented photographs of the partially melted milkshake taken shortly after the accident and argued that the photographs suggested that it had been on the floor for an extended period of time. *Reid*, 545 F.3d at 482. The Seventh Circuit affirmed the district court's grant of summary judgment to Kohl's, however, finding that the plaintiff failed to meet her burden to establish constructive notice. *Reid*, 545 F.3d at 483. The Seventh Circuit agreed with the district court that ten minutes was the outside limit of time the milkshake was on the floor, based upon the uncontradicted statement of the manager. *Reid*, 545 F.3d at 482. The Seventh Circuit stated:

> Under the circumstances of this case, no reasonable person could conclude that ten minutes was enough time to give Kohl's constructive notice of the spilled substance. Illinois law recognizes that there is no bright-line rule indicating the requisite time to establish notice, though periods in excess of ten minutes have failed the test. *See, e.g., Hayes* [*v. Bailey*, 400 N.E.2d 544, 546-47 (Ill. App. Ct. 1980)]. Rather we look to the circumstances of the particular case to determine if the length of time gave rise to notice. *Peterson* [*v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001)]. Here, [the manager] testified that on the afternoon of the accident, very few customers were in the store, which lessened the likelihood of the hazardous condition. *See Hresil v. Sears, Roebuck & Co.*, [403 N.E.2d 678, 680 (Ill. App. Ct. 1980)]. Were customer traffic

heavy, the onus would have been on Kohl's to provide frequent and careful patrolling. *Peterson*, 241 F.3d at 604-05. The store was almost empty, so the duty to inspect the premises accordingly decreased. In addition, the Kohl's store's internal procedure for monitoring spills and other dangerous conditions appropriately addressed the threat of such issues. *Hresil*, 38 Ill. Dec. 447, 403 N.E.2d at 680; *see also Peterson*, 241 F.3d at 604-05. Considering these conditions as a whole, ten minutes was not enough to give Kohl's constructive notice of the spill.

*Reid*, 545 F.3d at 482-83.

In this case, Plaintiff testified that she saw no other customers as she walked to the back of the store down a large aisle, thus establishing that the store was not experiencing heavy customer traffic. In addition, Plaintiff has argued that, based upon the evidence, the puddle of water had to have been on the ground for at least a few minutes. Plaintiff has presented no evidence that the puddle of water was on the ground longer than that. This court concludes that, based on the circumstances here, a few minutes was not enough time to give Defendant constructive notice of the spill. *See Reid*, 545 F.3d at 482-83.

Plaintiff has argued, at length, that Defendant could not have followed its own policies, including its policy that action alleys were to be monitored "continuously." Plaintiff argued that Defendant failed to follow its own policies and that, if Defendant had followed

its policies, Defendant would have discovered the puddle.[5]  Plaintiff argued that she has

therefore shown that Defendant had constructive notice of the puddle.  In her Response to

Defendant's Motion for Summary Judgment, Plaintiff cited no case law to support this

argument.[6]  In fact, under Illinois law, Defendant has "no duty of continuous inspection."

*Peterson*, 241 F.3d at 605; *Porges v. Wal-Mart Stores, Inc.*, 2011 WL 939922, at *7 (N.D.

Ill. 2011).  This court therefore agrees with Defendant that, under Illinois law, Defendant was

not required to "stand guard every 10 feet in every single action alley throughout its store."

Plaintiff has argued that *Reid* is distinguishable because she "has demonstrated that

the puddle occurred in a location where the Defendant's own policies require constant

monitoring, regular safety sweeps, high alert because of the flooring, and more."  Plaintiff

further argued that she "testified that she did not see anyone in the area during her walk to

the back of the store; thereby demonstrating that the puddle was on the floor before she

started down the main aisle."  As noted previously, Plaintiff argued that this showed that the

_____

[5]  This court notes that, in her Reply to Defendant's Response to her Motion for Partial
Summary Judgment (#62), Plaintiff argued, without citing any authority, that the "doctrine of res
ipsa loquitur indicates that Defendant failed to follow its own policies and procedures."  This
court does not find this argument persuasive.  "The doctrine of *res ipsa loquitur* requires that (1)
the occurrence is one that ordinarily does not occur in the absence of negligence; and (2) the
defendant had exclusive control of the instrumentality that caused the injury." *Britton v. Univ. of
Chicago Hosps.*, 889 N.E.2d 706, 709 (Ill. App. Ct. 2008).  This court concludes that the doctrine
of res ipsa loquitur has no application to this case. *See Daleus*, 2012 WL 3835836, at *4
(doctrine inapplicable because the plaintiff could not show that the liquid was under Target's
exclusive control).

[6]  Plaintiff did cite case law in her above-mentioned Reply (#62).  This court has
reviewed the cases cited and concludes that none of the cases involved a situation similar to the
facts here.  This court has found the case law involving similar slip and fall claims to be
applicable and persuasive.

puddle was on the floor for at least a few minutes.

This court concludes that Plaintiff has not shown that *Reid* is distinguishable. In *Reid*, the manager testified that Kohl's had a routine procedure which "involved a continuous walk-through by the manager on duty to ensure that the store was clean and safe." *Reid*, 545 F.3d at 481. Even so, the Seventh Circuit concluded that the plaintiff failed to show that Kohl's had constructive notice of the milkshake spill. *See Reid*, 545 F.3d at 483.[7]

In *Daleus*, which involved very similar facts, the district court concluded that, because the undisputed evidence showed that Target had internal policies in place for monitoring and responding to hazards on the floor, "no reasonable trier of fact could find that Target had actual or constructive notice of the spill." *Daleus,* 2012 3835836, at *3; *see also McCarthy v. Target Corp.*, 2012 WL 967853, at *4-5 (N.D. Ill. 2012) (plaintiff failed to create a triable issue of material fact regarding constructive notice where the liquid was "clear" and "very difficult to see," there were no track marks in the liquid and no evidence that any other customers noticed the liquid); *Shimkus v. Target Corp.*, 2012 WL 619500, at *3 (N.D. Il. 2012) (summary judgment appropriate where the plaintiff could present no evidence as to how long the liquid was on the floor and there was no evidence that the store was so busy at the time of the accident that close patrolling was necessary). This court concludes that the same is true here.

_____

[7] This court notes that the spill in *Reid* was much more visible than the clear liquid spill involved here. Plaintiff testified that she would not have seen the puddle if she had been looking at the ground prior to the fall because "it was really blended in with the floor."

Plaintiff has also argued that, because Defendant has not located the investigation file, this court must conclude that the file contained evidence favorable to her. Plaintiff pointed out that Steward testified that Defendant's policies regarding an investigation were followed. Plaintiff therefore insists that a determination regarding the cause of the accident must have been made. This court cannot agree. On this record, there is no reason to believe that the missing investigative file contained any information which would be helpful to Plaintiff's case. Plaintiff herself testified that there were no adult witnesses to her fall. Also, the evidence shows that the associate Plaintiff found after the fall was at least several aisles away. A conclusion that the investigation determined that Defendant was the source of the puddle of water on the floor could only be based on speculation. Plaintiff has also made an issue of the fact that no video of the fall has been produced. However, generally, there is no duty to preserve evidence, but "such a duty may arise through an agreement, a contract, a statute, a 'special circumstance,' or by affirmative conduct." *Daleus*, 2012 WL 3835836, at *4, *quoting Cosgrove v. Commonwealth Edison Co.*, 734 N.E.2d 155, 161 (Ill. App. Ct. 2000). Plaintiff has not shown that any such circumstances existed in this case.

In addition, Defendant filed the affidavit of Robert Zermeno which stated that the surveillance cameras at the store are positioned in such a way that the area of Plaintiff's accident would not have been captured on the cameras. This court concludes that Plaintiff's argument regarding the missing investigation file does not provide any basis for denying Defendant's Motion for Summary Judgment.

Plaintiff has also argued that she can demonstrate constructive notice if her injury "was caused by a regular and recurring condition which the defendant was bound to foresee," citing *Dunlap*, 327 N.E.2d at 19. Plaintiff argued that evidence of prior accidents occurring at the same place or with the same instrumentality is admissible as tending to raise the presumption of knowledge of the part of Defendant, citing *Grewe v. W. Washington Cnty. Unit Dist. No. 10*, 707 N.E2d 739, 743 (Ill. App. Ct. 1999). Plaintiff argued that she has shown that, within the month and a half prior to the incident at issue, there were two incidents involving a slip and fall on clear liquid in the action alley at Defendant's store. She argued that there had been no other incidents involving slipping in clear liquid for over a year prior to the May 8, 2010 incident so the "sudden increase in incidents should have indicated to the Defendant that it had developed a problem with clear liquid accumulations on the action alley floors."

In response, Defendant argued that Plaintiff has not shown that either of the two prior accidents involved the same location or the same substance, noting that the store has many action alleys. Defendant argued that, under these circumstances, Plaintiff's claim of a foreseeable condition of danger is without merit and constructive notice cannot be inferred.

This court concludes that neither *Dunlap* nor *Grewe* support Plaintiff's position in this case. In *Dunlap,* the court concluded that the plaintiff, who fell on a discarded lollipop stick near the store's candy aisle, did not present any evidence to show any regular and recurring dangerous condition. *Dunlap*, 327 N.E.2d at 19-20. *Grewe* involved a very different

24

situation, the plaintiff fell on a slick spot on the floor of a lobby and the evidence showed that two other people fell on the same spot within an hour before her fall. *Grewe*, 707 N.E.2d at 743.

The Seventh Circuit has explained that, in cases where the plaintiff relies on "pattern or practice" constructive notice, "[w]hat is needed is a pattern of dangerous conditions which were not attended to within a reasonable period of time." *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 126 (7th Cir. 1988). In this case, Plaintiff has provided evidence that two similar spills occurred within a short time prior to her fall. She has not provided any other evidence and any inference that there was an inadequate response to the earlier spills could only be based on speculation. In fact, Plaintiff has discussed, at great length, Defendant's detailed and specific policies to reduce the risk of spills at its store.

In *Shimkus*, the district court considered a similar argument based upon evidence that spills were fairly common. *Shimkus*, 2012 WL 619500, at *4. The court stated:

> However, the fact that spills are common at Target is both unsurprising (in light of its business) and insufficient to demonstrate notice under *Culli*. *Culli* requires a pattern or practice of *inadequate responses* to such spills. Acknowledging this disconnect, Plaintiff argues that Target's awareness that spills would frequently occur, in conjunction with the number of slip and fall incidents at the Tinley Park Target in the three years before this incident, demonstrates "a recurrent condition that

25

> Target took no measures to rectify or prevent.  Under the case law this
>
> is sufficient to establish constructive notice."

*Shimkus*, 2012 WL 619500, at *4 (emphasis in original).  The district court rejected this argument, noting that, although Plaintiff had pointed to more than 25 incident reports of slips or falls at the store in the three years before her accident, the incident reports were "extremely spare, and offer[ed] little insight into the surrounding circumstances of the falls." *Shimkus*, 2012 WL 619500, at *4.  The court noted the absence of "any information to determine how many (if any) of those falls resulted from negligence" and stated that "[a]n indeterminate number of arguably negligent slips on other liquids and in other parts of the store cannot, in this Court's estimation, bring this case within the ambit of the repeated-incident theory of constructive notice." *Shimkus*, 2012 WL 619500, at *4.

In this case, Plaintiff has also provided no evidence regarding the surrounding circumstances of the two previous spills.  This court has no trouble concluding that if "spare" evidence regarding 25 prior incidents was not enough to show constructive notice under a repeated-incident theory in *Shimkus*, Plaintiff's spare evidence regarding two prior incidents is insufficient to show constructive notice in this case.

For all the reasons stated, this court concludes that Defendant is entitled to summary judgment on Plaintiff's claim.

## C.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Because this court has concluded that Defendant is entitled to summary judgment on

Plaintiff's claim, Plaintiff's Motion for Partial Summary Judgment (#46) must be DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion to Strike Reply (#54) and Motion to Stay Ruling (#55) are DENIED.

(2) Defendant's Motion for Summary Judgment (#40) is GRANTED.  Judgment is entered in favor of Defendant and against Plaintiff.

(3)  Plaintiff's Motion for Partial Summary Judgment (#46) is DENIED.

(4) This case is terminated.  Therefore, the settlement conference scheduled for October 3, 2013 at 9:30 a.m. is VACATED.

ENTERED this __17th__ day of ___September___, 2013.

s/Michael P. McCuskey

_____
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE